**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____  ___
                                               )
INGRID B. KILEY,                               )
              Plaintiff,                       )
                                               )          **CIVIL ACTION**
       v.                                      )          **NO. 14-40131-TSH**
                                               )
                                               )
                                               )
                                               )
METROPOLITAN PROPERTY AND                      )
CASUALTY INSURANCE CO.                         )
              Defendant.                       )
                                               )
_____  ___)


**ORDER**
**January 27, 2016**

**HILLMAN, D.J.**


**Background**

       Plaintiff, Ingrid Kiley ("Kiley" or "Plaintiff"), asserts claims against Defendant,

Metropolitan Property and Casualty Insurance Co. ("Metropolitan") for breach of contract

(Count I), breach of the covenants of good faith and fair dealing (Count II), and for unfair or

deceptive practices under Mass.Gen.L ch.176D and Mass.Gen.L. ch. 93A (Count III) arising out

of Metropolitan's denial of Plaintiff's insurance claim. During Metropolitan's investigation of

Plaintiff's claim, it employed the services of ISE Engineering, Inc. ("ISE") to evaluate the

condition of Plaintiff's home. Plaintiff seeks to depose Jeffrey Raiche ("Raiche"), the ISE

employee who conducted the on-site evaluation of her home, and John Certuse ("Certuse"), the

Director of Engineering for ISE who issued the report to Metropolitan regarding the property.

This Order addresses Defendant, Metropolitan Property And Casualty Insurance Company's Motion For Protective Order Pursuant To Fed.R.Civ.P. 26(c)(Docket No. 13) seeking a protective order against notices of taking depositions served on Raiche and Certuse.  For the following reasons, that motion is _denied_.  This Order also addresses Defendant, Metropolitan Property and Casualty Insurance Company's Motion To Compel Reference Pursuant To Mass.Gen.L. ch. 175, §99, Clause Twelfth (Docket No. 17).  For the following reasons, that motion is _allowed_.

### Discussion

_Metropolitan's Motion For Protective Order_

_Relevant Facts_

Kiley owns the home at which she resides in Brookfield, MA (the "dwelling"). At all relevant times, the dwelling was insured by a homeowner's insurance policy issued by Metropolitan. At some unknown point during the winter of 2013-2014, the pipes in the dwelling burst causing water damage to the dwelling; Kiley had been visiting at her daughter's home since December 24, 2013 and first learned of the damage when she returned on March 15, 2014. On or about April 2, 2014, Kiley notified Metropolitan of the loss. She advised Metropolitan that she had set the temperature in the dwelling at 65 or 66 degrees (Fahrenheit).  She did not have anyone check on the dwelling while she was away.  Kiley did not report the damages to Metropolitan right away, because she initially assumed that the claim would not be covered under her policy and therefore, had been attempting to extract the water herself.  The dwelling was primarily heated by oil.  Kiley had 201 gallons of oil delivered to the dwelling on December 2, 2013; she did not have automatic delivery, rather she received oil on a will call basis.  One upstairs room was heated by electricity; Kiley had left an electric heater on in that room.

As part of the investigation of the insurance claim, Metropolitan retained the services of ISE to review the claim and complete an evaluation of the dwelling. Kiley was notified of this on April 14, 2014. On April 16, 2014, Mr. Raiche conducted the on-site evaluation of the dwelling. Raiche found that the forced hot water boiler connected to the system piping in the basement was not in service.  The boiler had had been submerged in two inches of water and water had fallen onto the boiler from above, contacting the burner head and entering the combustion chamber. He further found that the flue passages were plugged, the jacket insulation was soot-stained, and the inside of the chimney thimble contained a thin layer of soot.  Testing of the boiler showed that it had not run out of fuel.  The heating system had last undergone routine maintenance in December of 2007.  Based on the amount of oil left in tank at the time of his inspection (206 gallons), he determined that the heating system was not in operation after December 2, 2013. Raiche's visual evaluation, along with an examination of Kiley's utility bills and oil delivery records, provided the basis for the April 28, 2014 report signed off on by Certuse. On May 8, 2014, Metropolitan notified Kiley that the loss was not covered under the policy because their "investigation and engineer have concluded that reasonable care was not taken to maintain heat in the home resulting in the pipe freeze."

On March 3, 2015, Kiley served deposition notices on Raiche and Certuse. Both depositions were noticed for March 31, 2015 to be conducted at ISE's office in Attleboro, Massachusetts.  Metropolitan intends to call Raiche and Certuse as expert witnesses.  Kiley does not intend to compensate them for their time in responding to discovery.

*Applicable Legal Standard*

The Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" for good cause. Fed. R. Civ. P. 26(c). The burden is on the moving party to demonstrate good cause. *Pub. Citizen v. Liggett Grp., Inc.*,

858 F.2d 775, 789 (1st Cir. 1988). A district court is given broad discretion to decide "when a protective order is appropriate and what degree of protection is required." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

*Whether Kiley Should Be Required to Reimburse Raiche and Certuse*

This Court's rules of procedure permit a party to "depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). For any such experts, the party seeking discovery must pay a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A), unless manifest injustice would result. Fed.R.Civ. P. 26(b)(4)(E). The impetus behind Rule 26(b)(4)(A)'s reimbursement requirement is "that it is unfair to let one party have for free what the other party has paid for. … that unfairness can be remedied, in an appropriate case, by requiring the party seeking discovery to share the cost."  8A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2034 (3d ed.).

Metropolitan has moved for a protective order in response to notices from Kiley for the taking of the depositions of Raiche and Certuse. Metropolitan states that it intends to designate both Raiche and Certuse as expert witnesses who are anticipated to testify at trial, and should be compensated a reasonable fee for their time spent in responding to discovery. *See* Fed.R.Civ.P. 26(b)(4)(E).   In support of its argument, Metropolitan points out that the principal claims asserted by Kiley in her Amended Complaint do not challenge the opinions of Raiche and Certuse or assert that it erroneously relied on their factual conclusions. Metropolitan's position is that the deposition testimony of Raiche and Certuse are not required or vital to Kiley's trial preparation and, therefore, she should reimburse them for their deposition preparation and

testimony. Kiley opposes the motion on the grounds that Raiche had not been identified as an expert witness at the time that she issued the deposition notice, and that requiring her to pay the reasonable fees of these deponents would cause manifest injustice.[1]

Rule 26 only applies to experts "who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters . . . If the individual is not providing testimony under Rule 702, he is not an expert witness for the purpose of Rule 26." *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 26(a)(2) advisory committee notes (1993 Amendment)( Rule 26 "use[s] the term 'expert' to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters."). Moreover, "if the expert is an actor or viewer with regard to the events in issue, and therefore subject to discovery on this knowledge without reference to Rule 26(b)(4), it would not be appropriate to view deposition inquiry into those areas as time spent responding to discovery authorized by Rule 26(b)(4)." 8A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2034 (3d ed.); *see also Gomez*, 344 F.3d  at 113 (as used in Rule 26(b)(4), term expert "does not encompass a percipient witness who happens to be an expert."); *Turner v. Delta Air Lines, Inc.*, No. 06 CV 1010NG, 2008 WL 222559, at *1 (E.D.N.Y. Jan. 25, 2008)(The provision in Rule 26(b)(4)(C) for "reasonable compensation" for experts is not "automatically triggered" whenever witness who may also be an expert in his or

---

[1] Neither party has provided the Court with any information as to the rates that would be charged by Raiche and Certuse in connection with their preparation for and appearance at their depositions.  Kiley has submitted an affidavit in which she asserts that having to reimburse Raiche and Certuse would be an undue hardship because she is disabled, elderly, unemployed, her income is limited to social security benefits and her monthly expenses exceed her monthly income.  However, at the hearing, her counsel suggested that she would be able to compensate them if the deposition were short and concise.  On this record, Kiley has failed to provide sufficient evidence from which the Court could make a finding of manifest injustice.

her field is asked to testify, rather, it is the substance of witness's testimony that determines

whether witness is entitled to an expert fee).[2]

Under Rule 702, a witness is an expert witness when they are qualified as an expert and

they provide "scientific, technical, or other specialized knowledge [that] will help the trier of fact

to understand the evidence or to determine a fact in issue . . ." Fed.R.Evid. 702. As the party

seeking a protective order, Metropolitan bears the burden of showing that Raiche and Certuse are

expert witnesses under this rule. *See Emerson Elec. Co. v. Suzhou Cleva Elec.*, 2014 WL

5519152, at *3 (E.D. Mo. Nov. 3, 2014). Metropolitan must show that the essence of the

proffered testimony is consistent with Rule 702 to trigger the application of Rule 26's expert

witness requirements. *See Gomez*, 344 F.3d at 113 (citing *Patel v. Gayes*, 984 F.2d 214, 218 (7th

Cir. 1993)). At the time Kiley issued the notices of deposition, Raiche had not been designated

or identified as an expert witness by Metropolitan. He has since been identified as an expert

witness for Metropolitan, but at present, the record contains no information regarding his

intended testimony. Certuse, on the other hand, had been identified as an expert witness in

*Defendant, Metropolitan Property and Casualty Insurance Company's Answers to Plaintiff's*

*First Set of Interrogatories* (Docket No. 20-3). However, Metropolitan did not provide the

---

[2] There is no bright line rule for when an insurer anticipates litigation. *See Jones v. Secord*, 2011 WL 2456097, at *3 (D. Mass. June 15, 2011). A determination of when an insurer begins anticipating litigation should be made on a case-by-case basis. *Id.* In general, insurance companies have a duty to investigate and evaluate claims made by its insured. *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991). "It is a fact of common knowledge that an overwhelming majority of claims asserted by parties generally are amicably resolved and that only a very small portion of them rise to the level of disputes, let alone to the level of lawsuits." *Amica Mut. Ins. Co.*, 217 F.R.D. at 83 (quoting *Pasteris v. Robillard*, 121 F.R.D. 18, 21 (D. Mass. 1988)). Therefore, in the majority of circumstances, the possibility of a threat of litigation arises only after an insurance company makes a decision with regards to a claim. *Harper*, 138 F.R.D. at 663. Absent a showing to the contrary, the investigations of a claim are considered a part of an insurer's ordinary course of business, and are not investigations conducted in anticipation of litigation. *Jones*, 2011 WL 2456097, at *3; *Harper*, 138 F.R.D. at 662-63.

subject matter upon which he is expected to testify, or the substance of the facts and opinions to which he is expected to testify, or a summary of the grounds of each opinion. *See id.*

Although it is not definitive from the record whether the testimony of Raiche's and Certuse's testimony will satisfy Rule 702, given the contents of the April 28th report from ISE to Metropolitan, it is likely that their testimony will include scientific, technical, or other specialized knowledge.  However, insofar as the testimony is based on facts, opinions, and knowledge known to Raiche and Certuse prior to the denial of Kiley's insurance claim, arguably, it is not testimony based on information acquired in preparation for trial.  Rather, they are professionals who have acquired or developed facts based on their own observations which Metropolitan used to determine whether to deny Kiley's claim. As such, they are not entitled to reimbursement of reasonable fees under Rule 26(b)(4)(E). *See* Fed. R. Civ. P. 26(b)(4) advisory committee notes (1970 Amendment)(Rule 26(b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness").

*The Motion To Compel*

Metropolitan requests that this Court order Kiley to submit the dispute over her claimed damages to reference in accordance with Mass.Gen.L. ch 175, §99 clause twelfth ("Chapter 175, §99, cl. 12")  That provision requires insurance companies issuing fire insurance policies in Massachusetts to include the following relevant mandatory language in their policies:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference,

unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

Mass. Gen. Laws ch. 175, § 99.

*Relevant Facts*

The Policy contains the following language:

2. **What You Must Do After A Loss.** We have no obligation to provide coverage under this policy if you or your representative fail to comply with the following duties.

   A. immediately notify us or our representative.

   ….

   B. Protect the property from further damage, make reasonable and necessary repairs required to protect the properly and keep a record of necessary expenditures. Some or all of these expenses may be reimbursable under this policy.

   ….

   D. Prepare an inventory of damaged or stolen personal properly showing, in detail, the quantity, age, description, actual cash value and amount of loss claimed for each item. Attach to the Inventory all bills and other documents that substantiate the figures in the inventory.

….

7. **Appraisal**. If you and we fail to agree on the amount of loss, we will refer this matter to a three-member board of referees. They will be selected and must act according to the procedures set by law. Their decision will be binding. This board will not make any decisions about matters of coverage or fault.

….

9. **Lawsuits Against Us**. No suit or action may be brought against us by you unless there has been full compliance with all of the policy terms.

Under Section I of this policy, any suit or action seeking coverage must be brought within two years of the loss. However, if a court prevents the start or continuance of the action, but at a later date allows the action to resume, it must be resumed within one year of the court order.

If a disagreement about the amount of loss has been referred to a board of referees within two years of the date of loss, any action against us must be started within 90 days after the board's decision.

On May 8, 2014, Metropolitan sent Kiley a letter denying her claim.  In this letter, Metropolitan quoted Sections 2B and 9 set forth above.[3] The letter also included the following language:

This language applies   your loss because our investigation and engineer have concluded that reasonable care was not taken to maintain heat in the home resulting in the pipe freeze.

We hope this information explains our position. You should also be aware that no lawsuit or action may be brought against us by you unless there has been full compliance with all of the policy terms. Please refer to your policy for the specific time limitation to file suit. This letter is not intended as a waiver of any of the terms and provisions/conditions of your insurance policy with us.

On May 30, 2014, Kiley sent Metropolitan a letter requesting that it reconsider its denial of coverage. In that letter, Kiley requests that Metropolitan *provide her* with repair estimates and all valuation of inventory concerning personal property damage.  Metropolitan responded on

---

3 The letter included additional language from Section 9 which is not relevant to the motion to compel.

9

June 16, 2014 denying Kiley's request for reconsideration and noted that "there was not an estimate or inventory of damages completed for the dwelling or personal property."

Kiley filed suit in Massachusetts Superior Court on August 1, 2014 and on August 4, 2014, sent Metropolitan a demand letter pursuant to Chapter 93A; she filed an amended complaint on September 9, 2014 which included a Chapter 93A claim.  On August 20, 2014, Metropolitan responded in writing to Kiley's Chapter 93A demand letter.  Metropolitan's response included the following language:

> Notwithstanding its denial of coverage to your client, Metropolitan specifically rejects any assertions made by your client regarding the amount of loss caused by the subject incident.  Metropolitan specifically reserves all of its rights both under the policy, as well as M.G.L., §99 clause twelfth, with regard to resolution of the amount of loss caused by the subject incident.  McCord v. Horace Mann Insurance Company, 390 F.3d 138 (1st Cir. 2004). [4]

Metropolitan's Answer to Kiley's amended complaint included the affirmative defense that Kiley had failed to comply with Chapter 175, §99, cl. 12.  Nowhere in her submissions does Kiley provide an estimate of her alleged loss; in her initial Fed.R.Civ.P. 26(a)(1) disclosure, she takes the position that the Defendant, Metropolitan, should have calculated the amount of her loss.

*Whether Metropolitan Has Waived Its Right To Demand Compliance With Chapter 175, Section 99, clause Twelfth*

The purpose behind a Chapter 175, §99, cl. 12 reference proceeding is to obviate the need for certain judicial proceedings and expedite the equitable settlement of claims. *See Employers' Liability Assurance Corp. v. Traynor,* 354 Mass. 763 (1968). Indeed, "referees are empowered to

---

[4] In her opposition's recitation of facts, she states that Metropolitan's response "makes no mention that there is a dispute between the parties concerning the amount of the loss," and makes no mention that the letter includes the above quoted language.  Later in her opposition, she again states that Metropolitan never disputed the amount of the loss, and refers to Metropolitan's response containing "general, one sentence language concerning the defendant's reservation of rights."  Given the clear, unambiguous language used by Metropolitan in its response reserving its rights under Chapter 175, §99 cl. 12, I am disturbed by Kiley's misleading treatment of this issue.

determine the amount of damages from a specific cause, so long as they shy away from questions of ultimate liability. Presumably, once the parties know exactly how much money is at stake, they can settle a case more easily. Also, more technical issues of damages assessment are thereby taken out of the hands of lay persons and made the responsibility of experts." *F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 33 (D. Mass. 1995)(internal citation omitted).  Kiley makes three arguments in opposition to Metropolitan's motion to compel reference of the loss amount in accordance with Chapter 175, §99, cl. 12: (1) the right to invoke this provision lies with the insured, not the insurer; (2) because Metropolitan denied coverage, the parties have never addressed the amount of loss and therefore, there is no dispute as to the amount of the loss; and (3) Metropolitan has waived compliance with this provision by no invoking it in a timely manner.

Kiley's arguments have little merit.  Both the language of the policy provision and the language of the statute provide that the parties to the contract mutually agree that there be a reference proceeding should the parties fail to agree on the amount of loss; while partaking in a reference proceeding is a condition precedent to the insured bringing suit, the language does not limit the right to invoke the provision to the insured. Kiley repeatedly argues that Metropolitan never provided her with an amount as to her estimated losses and therefore, cannot be said to be disputing the amount of loss.  However, on the record before me, Kiley did not provide Metropolitan with any estimate of the losses she sustained prior to filing suit.  Under the policy, the impetus is on her in the first instance to prepare an inventory of damaged personal property, which includes "the quantity, age, description, actual cash value and amount of loss claimed for each item."   Furthermore, while there is no evidence of that the parties have formally exchanged estimates, they did acknowledge at the hearing that they are far apart and that Kiley's

11

number is far more than their valuation of her claim. In fact, based on the parties' representations to the Court, it is clear that there is a significant disagreement as to the loss amount.  Thus, the matter is in the precise position for which the reference requirement is intended.

Kiley's waiver argument also fails.  "Waiver … may be inferred from the conduct of the insurer or its agents, but the burden of proving such waiver or excuse falls on the party seeking to rely upon it." *Moran v. Phoenix Ins. Co.*, 7 Mass.App.Ct. 822 (1979); *see also Molea v. Aetna Ins. Co. of Hartford, Conn.*, 326 Mass. 542, 547, 95 N.E.2d 749, 752 (1950)( burden of proving waiver or excuse falls upon party who seek to rely upon it).  While it is true that Metropolitan's sole basis for its initial refusal of Kiley's claim was that there was no coverage under the policy, this case is distinguishable from *Moran* in that prior to filing suit, Kiley never provided Metropolitan with any estimate of her loss and therefore, its initial silence does not raise an inference that it was not contesting the amount of the loss.  On the contrary, in both its response to Kiley's Chapter 93A letter and its answer to the Amended Complaint, Metropolitan invoked Chapter 175, §99 cl.12— and expressly stated that it was rejecting any assertions made by Kiley regarding the amount of her loss.  Moreover, it is difficult to fault Metropolitan for not more actively disputing the amount of Kiley's loss *given that she never provided with an estimate of her losses,* for as the Supreme Judicial Court has recognized,  "[i]nsurers are 'often unable to obtain reliable independent information as to the extent of the loss.'" *Ben Elfman & Sons, Inc. v. Home Indem. Co.*, 411 Mass. 13, 20, 576 N.E.2d 670, 674 (1991).

Under these circumstances, I do not find that Metropolitan waived the reference provision. *See Molea*, 326 Mass. at 548 (although jury may infer waiver of special defense by insurance company from slight evidence, there must be some proof of conduct of company bearing on defense). I further find that compliance with the reference provision is appropriate.

*See McCord v. Horace Mann Ins. Co.*, 390 F.3d 138 (1st Cir. 2004)(even though insurer denies liability, reference provision must be observed absent agreement as to loss amount); *F.C.I. Realty Trust*, 906 F.Supp. at 33-34(no waiver where insurer raised reference issue as affirmative defense and has repeatedly declined to waive its rights under policy).   Accordingly, this case will be stayed  to permit referral as required by Mass.Gen.L. ch. 175, § 99, cl. 12. Once the reference proceeding is completed, the parties may return to this court if the matter has not been resolved and proceed with the litigation on all counts. *See Santos v. Preferred Mut. Ins. Co.*, 939 F. Supp. 2d 67, 68 (D. Mass. 2013).

<u>**Conclusion**</u>

1.  Defendant, Metropolitan Property And Casualty Insurance Company's Motion For Protective Order Pursuant To Fed.R.Civ.P. 26(c)(Docket No. 13), is ***denied***; and

2.   Defendant, Metropolitan Property and Casualty Insurance Company's Motion To Compel Reference Pursuant To Mass.Gen.L. ch. 175, §99, clause twelfth (Docket No. 17) is ***allowed***.  This matter shall be stayed pending the referees issuance of their decision in accordance with Mass.Gen.L. ch. 175, §99, clause twelfth. It is this Court's intention that the referral process be completed promptly. The parties will jointly report to this Court in writing on or before March 31, 2016, regarding the status of the referral process.

**So Ordered.**

<u>**/s/ Timothy S. Hillman**</u>
TIMOTHY HILLMAN
DISTRICT JUDGE

13